IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TV TOKYO CORPORATION,<br><br>  Plaintiff,<br><br>v.<br><br>ABCDY MAN, et al.,<br><br>  Defendants. | Civil Action No. 25-cv-6494-LMM |

**BRIEF IN SUPPORT OF
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

TV Tokyo Corp. files this brief in support of its Motion for Default Judgment and states as follows:

**I.  Introduction**

This is a lawsuit for copyright and trademark infringement brought by Plaintiff TV Tokyo Corporation ("Plaintiff") against a group of interrelated defendants selling merchandise that infringed Plaintiff's intellectual property rights. Plaintiff respectfully requests that it be awarded[1] $100,000 in statutory damages for trademark infringement, $50,000 in statutory damages for copyright infringement, and that a permanent injunction be entered against each Defendant.

---

[1] A breakdown of the specific damages to be awarded against each individual Defendant is attached as Exhibit B to the proposed default judgment.

A. **Statement of Facts**

TV Tokyo Corporation is a leading Japanese content producer and broadcaster of movies and videos with a particular strength in animation. Plaintiff has a principal place of business at Roppongi Grand Tower, 3-2-1 Roppongi, Minato-ku, Tokyo 106-8001 Japan. TV Tokyo is a company organized and existing under the laws of Japan. (Complaint p. 3 (Doc. 1)).

Plaintiff TV Tokyo is in the business of developing, marketing, and distributing NARUTO-branded television series and theatrical films worldwide and exclusively manages the licensing of NARUTO-branded products and services worldwide, having been appointed to do so by the manga series publisher and registered owner of the NARUTO mark. (Complaint pp. 10-12).

NARUTO is one of the best-selling Japanese manga series in history, written and illustrated by the renowned author and artist, Masashi Kishimoto. (Complaint pp. 9-12). 250 million copies of the NARUTO manga series have been circulated worldwide in 46 countries and regions. (*Id.*). English translations of the NARUTO manga series have consistently appeared on the USA Today and The New York Times bestseller lists. Plaintiff TV Tokyo co-produced and distributes the NARUTO franchise of animated television series and theatrical films together with Shueisha Inc. (*Id.*).

The NARUTO brand of products distributed and/or licensed by Plaintiff TV Tokyo, has expanded beyond the manga series and audiovisual properties to cover a variety of other areas, including toys, games, back-to-school items, stationery, apparel, accessories, and all kinds of household commodities, food and beverages. Plaintiff, through its duly authorized licensees, is the official source of NARUTO products. (Complaint pp. 9-12).

Plaintiff TV Tokyo exclusively licenses the use of U.S. Trademark Registration No. 3,726,754 for the NARUTO word mark in International Classes 9, 16, 25, 28 and 41 (the "NARUTO Trademark"). That registration is valid and, under 15 U.S.C. § 1065, incontestable. (Complaint ¶4 and Ex. 1). Plaintiff is the owner of the works covered by U.S. Copyright Reg. Nos. PA-2-277-887, PA 2-431-062, and PA-2-276-002 (collectively, the "NARUTO Works"). (Complaint ¶7 and Ex. 2).

B.   **Defendants' Unlawful Activities**

The success of the NARUTO franchise has resulted in its significant counterfeiting. ( Complaint ¶¶24-29). Consequently, Plaintiff has implemented anti-counterfeiting and anti-infringing programs, which includes investigating suspicious websites and online marketplace listings identified through external vendors in proactive Internet sweeps. (Complaint ¶ 26).

Plaintiff has identified numerous online marketplace accounts linked to fully

interactive websites and marketplace listings on platforms, including the fully interactive commercial Internet stores operating under the Defendant aliases and/or the online marketplace accounts identified in Schedule A attached to the Complaint (collectively, the "Seller Aliases"), which were offering for sale, selling and importing counterfeit products in connection with counterfeit versions of Plaintiff's federally registered NARUTO Trademark and Works (the "Infringing Products") to consumers in this district and throughout the United States. (Complaint ¶35). Despite Plaintiff's enforcement efforts online, Defendants have persisted in creating the Seller IDs to shield their identities. (Complaint ¶15).

### C. Procedural History

December 1, 2025, the Court entered an order allowing Plaintiff to serve Defendants electronically. (Doc. 15). After obtaining email addresses from third parties who provide e-commerce services to Defendants, Plaintiff served Defendants by email. (Lilenfeld Third Decl. (Doc. 44-1)). After notice to Defendants and a hearing on December 4, the Court entered a preliminary injunction against Defendants. (Order, December 20, 2025 (Doc. 25)). During this litigation a number of Defendants reached settlements with Plaintiff, resulting in dismissal of those Defendants. (*See* Docs. 17, 27, 32, 34, 35, 38, 40 and 43). The Defendants that remain are those who have neither appeared nor otherwise defended this action. As to those non-appearing Defendants, the Clerk entered

default[2] on February 20, 2026 and Plaintiff now moves for a default judgment against them. These non-appearing Defendants are listed in Exhibit A to the proposed default judgment submitted herewith. (Doc. 45-2).

## II.     Citation to Law and Argument

### A.     Default Judgment Is Appropriate

A default judgment is appropriate when there is a sufficient basis for the claims contained in the well-pleaded allegations of the complaint. (*Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1362 (N.D. Ga. 2011)). A defaulting defendant is deemed to admit the plaintiff's well-pleaded factual allegations. (*Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

Here, because Defendants failed to answer or otherwise respond to the Complaint, all well-pleaded factual allegations are deemed admitted. (Fed. R. Civ. P. 8(b)(6)). Furthermore, the Court has already tested the allegations in the Complaint and found them sufficient well-pleaded such that it has already issued a preliminary injunction. (Doc. 25).

---

[2] Although the Clerk's entry of default was docketed, it was not assigned a docket number.

## B. Defendants Are Liable for Trademark Infringement

As its first cause of action, Plaintiff has asserted a claim for trademark infringement under 15 U.S.C. § 1114. (Complaint ¶¶37-46).

Under Eleventh Circuit law, a plaintiff asserting a claim for infringement of a federally registered mark need only establish: (1) ownership of a valid and legally protectable mark, and (2) a likelihood of consumer confusion resulting from the defendant's unauthorized use of the mark. (*Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322, 326 (11th Cir. 1989); *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999)).

### 1. Plaintiff Has Standing As An Exclusive Licensee.

As to the first element, a plaintiff establishes ownership of a valid trademark through registration with the United States Patent and Trademark Office. (15 U.S.C. §§ 1057(b), 1115(a)). As alleged in the Complaint, Plaintiff is the exclusive licensee of a registered trademark. (Complaint ¶4 and *Fla. VirtualSchool v. K12, Inc.*, 735 F.3d 1271, 1273 (11th Cir. 2013) (citation and quotation omitted); 15 U.S.C. § 1127 (defining trademark's "registrant" to include "the legal representatives, predecessors, successors and assigns of such . . . registrant")).

As noted above, the NARUTO Trademark is federally registered and is now incontestable. (Complaint ¶4). This registration is *prima facie* evidence of the validity, ownership, and exclusive right to use the marks in commerce. (15 U.S.C.

§ 1115(a)). As the exclusive licensee, Plaintiff has established the first element of its trademark infringement claim.

### 2. *Plaintiff Has Demonstrated a Likelihood of Confusion*

With respect to the second element, likelihood of confusion, the Eleventh Circuit considers whether the defendant's use of the mark is likely to cause confusion, mistake, or deception as to the source, sponsorship, or affiliation of the goods. (*Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999)).

The Complaint alleges that Defendants used identical or substantially indistinguishable copies of the NARUTO Trademark in connection with the sale of competing goods through online storefronts, without authorization. (Complaint ¶¶37-45). The Complaint further alleges that Defendants' use of NARUTO is likely to cause consumer confusion by falsely suggesting affiliation with or sponsorship by Plaintiff. (*Id.*). Finally, the Complaint alleges that Defendants' infringement was knowing and willful, including allegations that Defendants intentionally reproduced, displayed, and sold goods bearing Plaintiff's trademarks despite having no license or authorization to do so. (*Id.*).

Bolstering these allegations, Plaintiff provided as an exhibit to the Complaint, screenshots showing Defendants infringing use of the NARUTO

Trademark. (Complaint Exhibit 3). Thus, Plaintiff has established the second element of trademark infringement.

In conclusion, the well-pleaded factual allegations establish that Plaintiff has satisfied both elements of its claim for trademark infringement against Defendant under the Lanham Act. Therefore, default judgment should be entered in favor of Plaintiff and against Defendants.

C. **Defendants are Liable for False Designation of Origin**

As its second cause of action, Plaintiff has asserted a claim for false designation of origin, passing off, and unfair competition under 15 U.S.C. § 1125(a). (Complaint ¶¶47-52).

Under Eleventh Circuit law, to establish a claim for false designation of origin and unfair competition under the Lanham Act, a plaintiff must show that: (1) the defendant used a false designation of origin or misleading representation of fact in commerce, and (2) the use is likely to cause consumer confusion as to the affiliation, connection, sponsorship, or approval of the defendant's goods by the plaintiff. (*Tana v. Dantanna's*, 611 F.3d 767, 773–74 (11th Cir. 2010); *Optimum Techs., Inc. v. Home Depot U.S.A., Inc.*, 217 F. App'x 899, 902 (11th Cir. 2007)).

The Complaint alleges that Defendants used NARUTO and closely associated indicia in connection with the promotion, offering for sale, and sale of unauthorized products through online storefronts and marketplace listings.

8

(Complaint ¶¶ 47-51). The Complaint further alleges that Defendants' use of the NARUTO Trademark falsely suggests that Defendants' products originate from, are affiliated with, sponsored by, or approved by Plaintiff, when they are not. (*Id*.).

The Complaint also alleges that Defendants' conduct was deliberate and willful, including that Defendants knowingly adopted Plaintiff's trademark to steal Plaintiff's goodwill, reputation, and brand recognition, and to deceive consumers into purchasing unauthorized products under the false belief that such products were genuine or authorized. (Complaint ¶¶ 49-50). Such allegations satisfy the requirement that Defendants used a false or misleading designation of origin in commerce.

With respect to likelihood of confusion, the Eleventh Circuit recognizes that the unauthorized use of an identical or substantially similar mark in connection with competing goods is sufficient to establish a likelihood of confusion, particularly where, as here, the products are sold to the general consuming public through online marketplaces. (*See Frehling Enters., Inc.*, 192 F.3d at 1335). The Complaint alleges that Defendants' use of NARUTO in connection with the sale of unauthorized goods is likely to cause confusion, mistake, or deception among consumers as to the source, sponsorship, or approval of Defendants' products. (Complaint ¶¶ 48-49).

Taken together, these well-pleaded factual allegations establish that Defendants engaged in false designation of origin and unfair competition under the Lanham Act. Plaintiff has therefore sufficiently pleaded its unfair competition claim, and entry of default judgment on this count is warranted.

**D.     Defendants' Lanham Act Violations Are Willful**

The well-pleaded allegations of the Complaint further support a finding of willful infringement. (Complaint ¶¶26-35 and 56). The Eleventh Circuit recognizes willfulness where a defendant knowingly adopts and uses a plaintiff's trademark with the intent to capitalize on the plaintiff's reputation and goodwill, or acts with reckless disregard for the plaintiff's trademark rights. (*See Optimum Techs., Inc. v. Home Depot U.S.A., Inc.*, 217 F. App'x 899, 902-03 (11th Cir. 2007); *Burger King Corp. v. Mason*, 855 F.2d 779, 781-82 (11th Cir. 1988)).

The Complaint alleges that Defendants intentionally reproduced and used counterfeit and infringing versions of Plaintiff's federally registered trademarks in connection with the sale of unauthorized goods, despite having no license or authorization to do so, and did so in a manner designed to deceive consumers into believing the goods were genuine or affiliated with Plaintiff. (Complaint, ¶¶37, 44-45, and 51-52). The allegations further establish that Defendants deliberately operated deceptive online storefronts, concealed their identities through aliases, and continued their infringing conduct as part of a coordinated scheme to trade on

Plaintiff's goodwill. (Complaint ¶¶ 17-32). These facts, deemed admitted by Defendants' default, demonstrate knowing and intentional infringement and therefore establish willful trademark infringement under the Lanham Act, supporting enhanced remedies, including disgorgement of profits, treble damages, statutory damages for counterfeiting, and attorneys' fees.

### E. Plaintiff's Lanham Act Damages Are Liquidated

The well-pleaded allegations of the Complaint also establish that Defendants are liable for statutory damages for willful counterfeiting under the Lanham Act. Section 35(c) of the Lanham Act authorizes a plaintiff, in a case involving the use of a counterfeit mark, to elect statutory damages in lieu of actual damages and profits. 15 U.S.C. § 1117(c). A "counterfeit mark" is an unauthorized mark that is identical with, or substantially indistinguishable from, a federally registered mark and is used on or in connection with the sale, offering for sale, or distribution of goods. (15 U.S.C. § 1116(d)(1)(B)).

The Complaint alleges that Defendants used counterfeit versions of Plaintiff's federally registered NARUTO Trademark - marks that are identical or substantially indistinguishable from Plaintiff's registered mark - in connection with the manufacture, advertisement, offering for sale, and sale of unauthorized goods through online storefronts and marketplace listings. (Complaint ¶¶ 37-44).

The Complaint also alleges that Defendants' counterfeiting was knowing and willful, including allegations that Defendants deliberately reproduced the NARUTO Trademark without authorization, operated deceptive online storefronts, concealed their identities through aliases, and participated in a coordinated scheme to profit from Plaintiff's goodwill. (Complaint ¶¶ 17-32 and 37-44). These allegations, deemed admitted by Defendants' default, establish willful counterfeiting within the meaning of the Lanham Act.

Accordingly, Plaintiff is entitled to statutory damages under 15 U.S.C. § 1117(c) including up to $2,000,000 *per* counterfeit mark *per* type of goods for Defendants' willful counterfeiting. Because Defendants have defaulted and their willful counterfeiting conduct has been established as a matter of law, Plaintiff seeks an award of statutory damages in an amount of $100,000, which Plaintiff believes is appropriate to compensate Plaintiff, deter future infringement, and prevent Defendants from profiting from their unlawful conduct.

### F.   Defendants Are Liable for Copyright Infringement

For its third cause of action, Plaintiff has asserted a claim of copyright infringement. (Complaint ¶¶53-62).

To establish *prima facie* copyright infringement, the two elements that must be proven are (1) ownership of a valid copyright, and (2) copying of constituent

elements of a work that are original. (*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

"[I]t is well-settled that ownership of the copyright is demonstrated through compliance with the formalities of registration," particularly when the opposing party offers no contradictory evidence. (*Lifetime Homes, Inc. v. Residential Development Corp.*, 510 F. Supp. 2d 794, 801 (M.D. Fla. 2007) (citing *Donald Frederick Evans & Assoc., Inc., v. Cont'l Homes, Inc*., 785 F.2d 897, 903 (11th Cir. 1986)). Additionally, a court may judicially notice U.S. Copyright Office records under Federal Rule of Evidence 201. (*Frazetta v. Vanguard Prods., LLC*, 716 F. Supp. 3d 1265, 1273 (M.D. Fla. 2024)).

As to the first element, the Complaint alleges that Plaintiff is the owner of Copyright Registration Nos. PA 2-277-887, PA 2-431-062, and PA 2-276-002 (collectively the "NARUTO Works"), which were registered with the U.S. Copyright Office prior to the commencement of this action as required by 17 U.S.C. § 411(a). (Complaint ¶7). The registrations identify Plaintiff as the copyright owner for the NARUTO Works and constitute prima facie evidence of the validity of the copyrights and of the facts stated in the certificates of registration. (Complaint Exhibit 2; 17 U.S.C. § 410(c)).

Thus, Plaintiff has established the first element of its copyright infringement claim.

As to the second element, the Complaint alleges Defendants created online stores offering Infringing Products that incorporated the NARUTO Works and includes as an exhibit screenshots demonstrating Defendants' infringing conduct. (Complaint ¶¶16-21 and Exhibit 3).

Taken together, these well-pleaded factual allegations establish that Defendants engaged in copyright infringement. Plaintiff has therefore sufficiently pleaded its copyright infringement claim, and entry of default judgment on this count is warranted.

### G. Defendants' Copyright Infringement Was Willful

Copyright infringement is willful when the defendant "knows its actions constitute an infringement or acts with reckless disregard for the copyright holder's rights." (*Cable/Home Commc'ns Corp. v. Network Prods., Inc.*, 902 F.2d 829, 848 (11th Cir. 1990) and *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1272 (11th Cir. 2015)). Direct proof is rarely available, so intent and knowledge may be inferred from conduct such as concealment, continued sales after notice, or use of aliases. (*Cable/Home* at 851).

The Complaint contains facts supporting a finding of willfulness. Defendants "created numerous Internet Stores" designed to appear to sell authorized products while selling Infringing Products. (Complaint ¶¶ 17-36). The Complaint also asserts that Defendants deliberately imitated Plaintiff's branding

14

and such demonstrates Defendants' intent to mislead consumers in order to profit. *Id*. The Complaint further alleges Defendants "share unique identifiers," use "aliases," "conceal both their identities and the full scope of their illegal operations," and "go to great lengths" to hide their activities. (Complaint ¶¶ 17-36). Concealment and use of false identities are classic indicia of knowing, intentional infringement and of transferring funds through payment gateways to avoid detection. (Complaint, ¶¶ 35-36). Financial concealment and use of offshore banking reflect willful evasion and bad faith.

Together, these facts show knowing, deliberate infringement. On default, these unrebutted allegations are taken as true. (*Tyco Fire & Sec. v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (establishing willful infringement as a matter of law)).

### H. The Court Should Award Statutory Damages Under the Copyright Act

The Copyright Act provides for statutory damages for infringement. Under Section 504(c), a court may award up to $30,000 per infringement if unintentional and up to $150,000 per infringement if found to be willful. As the Supreme Court has previously observed, "[e]ven for uninjurious and unprofitable invasions of copyright" the court may "impose a liability within statutory limits to sanction and vindicate the statutory policy" of protecting intellectual property. (*F. W. Woolworth Co. v. Contemporary Arts, Inc*., 344 U.S. 228, 233 (1952)).

Because the case involves clearly willful infringement, Plaintiff requests that it be awarded statutory damages in the amount of $50,000.

Awarding $50,000 in statutory damages is in line with other cases with similar facts. (*See Smiley Company SPRL v. Individuals, Partnerships & Unincorporated Ass'ns (Schedule "A")*, No. 23-22352 (S.D. Fla. Apr. 26, 2024) (court granted default judgment, issued a permanent injunction, and awarded $55,000 statutory damages per defaulting defendant); *ZURU (Bunch O Balloons) v. Temu Sellers*, No. 23-22665 (S.D. Fla. Dec. 22, 2023) (default judgment and permanent injunction, plus statutory damages of $100,000 per defaulting defendant); *TWOWS, LLC v. Individuals, Partnerships & Unincorporated Ass'ns*, No. 8:23-cv-00139 (M.D. Fla. 2024) (awards statutory damages and permanent injunction, noting willfulness allows up to $150,000 per work)).

In conclusion, Plaintiff respectfully requests that it be awarded $50,000 in statutory damages for each Defendant's infringement of the NARUTO Works.

I.     **Plaintiff Is Entitled To A Permanent Injunction**

A permanent injunction is authorized under 17 U.S.C. Section 502(a) and is routinely considered necessary in intellectual property cases, especially where the defendants' infringement is willful and likely to continue. (*See Cable/Home Commc'ns Corp. v. Network Prods., Inc.*, 902 F.2d 829, 848 (11th Cir. 1990) (upholding permanent injunction where infringement was willful); *Arista Records,*

16

*Inc. v. Beker Enterprises, Inc.*, 298 F. Supp. 2d 1310, 1314 (S.D. Fla. 2003) (default judgment warranted permanent injunction to prevent further violations)).

To obtain permanent injunctive relief, a plaintiff must demonstrate (1) irreparable injury, (2) no adequate remedy at law, (3) a balance of hardships favoring the plaintiff and (4) that the public interest would not be disserved. (*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) and *Pacific & Southern Co. v. Duncan*, 744 F.2d 1490, 1499 (11th Cir. 1984)).

### 1. *Irreparable Injury*

Plaintiff has alleged and proven that through online storefronts, Defendants sold and can continue to sell Infringing Products that unlawfully utilize the NARUTO Works and Mark, and that Defendants conceal their identities through aliases and foreign accounts. (Complaint ¶¶ 17-36). The ongoing loss of control over its intellectual property and associated goodwill constitutes irreparable harm that cannot be quantified in money damages. (*See Sony Music Ent. v. Global Arts Prods.*, 45 F. Supp. 2d 1345, 1347 (S.D. Fla. 1999)).

### 2. *Inadequate Remedy At Law*

Monetary relief alone will not stop the infringement because Defendants operate anonymously, can quickly reopen new storefronts, and routinely evade enforcement (Complaint ¶¶ 31-33). Thus, future violations are likely absent an ongoing directive from the Court.

### 3. Balance of Hardships

The balance strongly favors Plaintiff. Defendants have no legitimate interest in continuing to sell counterfeit or infringing products, while Plaintiff faces continuing damage to its brand and exclusive rights each day infringement persists. (*See Coach, Inc. v. Swap Shop, Inc.*, 916 F. Supp. 2d 1271, 1282 (S.D. Fla. 2012)).

### 4. Public Interest

The public has a compelling interest in the protection of intellectual-property rights and in preventing consumer deception. (*See Twentieth Century Fox Film Corp. v. Stonesifer*, 140 F. Supp. 2d 1137, 1143 (C.D. Cal. 2001)). Enjoining these online infringers promotes lawful commerce and deters future misconduct.

### 5. Scope of Injunctive Relief

The injunction should permanently prohibit Defendants and all persons acting in concert with them from reproducing, distributing, advertising, or selling any goods bearing or derived from the NARUTO Works and Mark, and should require destruction of infringing goods under 17 U.S.C. Section 503(b). Because Defendants control their own product listings and inventory and can easily comply by ceasing unlawful conduct, the injunction imposes no undue burden and is narrowly tailored to address the specific infringement at issue.

Accordingly, Plaintiff respectfully requests that the Court include in its Default Judgment a Permanent Injunction in the form set forth in the

accompanying proposed order, restraining further infringement of the NARUTO Works and ordering destruction of infringing articles.

### III. <u>Conclusion</u>

Plaintiff respectfully requests that a default judgment be entered. A proposed Order is filed herewith.

Dated: March 2, 2026                           Respectfully submitted,

<div style="margin-left: 50%;">

*/s/ David M. Lilenfeld*
David M. Lilenfeld
Georgia Bar No. 452399
Abby Neu
Georgia Bar No. 200207
**WHITEWOOD LAW PLLC**
5555 Glenridge Connector, Suite 200
Atlanta, GA 30342
Telephone: (917) 858-8018
Email: david@whitewoodlaw.com

*Counsel for Plaintiff*

</div>

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(D), counsel certifies that the foregoing document complies with one of the font type and size selections approved by the Court in L.R. 5.1(C): Times New Roman 14-point font.

<div style="text-align: right;">

*/s/ David M. Lilenfeld*
David M. Lilenfeld

</div>